FILED

2024 Sep-17  PM 03:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| WILMA BEARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:23-cv-00874-SGC |
| | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Wilma Beard, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") on remand from this district court.  (Doc. 1).[2]  For the reasons discussed below, the Commissioner's decision is due to be reversed and remanded again.

## I.    Procedural History

Beard filed her initial application for DIB on September 28, 2015.  (Tr. at 524).    After   the   claim   was   denied,   Beard   requested   a   hearing   before   an

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 11).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear as: Doc. __ at __.  Citations to the administrative record (Doc. 9) refer to the page numbers assigned by the Commissioner and appear as: Tr. at __.

1

Administrative Law Judge ("ALJ"). (*Id.*). An ALJ conducted a hearing and then found Beard was not disabled. (*Id.* at 111-121). Beard sought review of the ALJ's decision by the Appeals Council, and the Appeals Council granted the request. The Appeals Council found the ALJ erred in failing to consider the opinion of Jack Bentley, Ph.D., a consultative examiner whose findings regarding Beard's limitations were inconsistent with the ALJ's finding regarding Beard's residual functional capacity. The Appeals Council remanded the case to the ALJ for further consideration. (*Id.* at 127-28).

On remand from the Appeals Council, the ALJ held a new hearing and issued another decision finding Beard was not disabled. (*Id.* at 596-608). Beard sought review of the ALJ's second decision by the Appeals Council, but this time, the Appeals Council denied review. (*Id.* at 615-17). Beard commenced an action in this district court on April 6, 2020. *See Beard v. Comm'r of Soc. Sec. Admin.*, Case No. 4:20-cv-00463-RDP (N.D. Ala. filed Apr. 6, 2020). Chief District Judge R. David Proctor reversed the ALJ's decision and remanded the case for further proceedings after concluding the ALJ's assignment of little weight to the opinion of Robert L. Pearlman, M.D., a neurologist who treated Beard for headaches, was not supported by substantial evidence. (Tr. at 624-43). The Appeals Council vacated the ALJ's second decision, ordered that the case be assigned to a different ALJ, and directed the new ALJ to conduct further proceedings consistent with Chief Judge Proctor's

remand order.  The Appeals Council noted Beard had filed a second application for DIB in the interval between the commencement of her action in this district court and entry of the remand order and directed the ALJ to consolidate the claim embodied in that application with the claim remanded to the ALJ for further consideration.  (*Id.* at 645-58).

A new ALJ conducted a third hearing and then, for a third time, found Beard was not disabled.  (*Id.* at 524-38).  The record lacks evidence Beard requested review of the third decision by the Appeals Council, but the Commissioner does not protest Beard's failure to exhaust her administrative remedies.  Therefore, the third decision is properly before the court for review under 42 U.S.C § 405(g).[3]

## II.    Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[3] As a general rule, a claimant must exhaust her administrative remedies before seeking review of the denial of her application for disability benefits. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260-61 (11th Cir. 2007).  This includes seeking review of an ALJ's decision denying benefits by the Appeals Council.  *Id.* at 1261 (citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). However, the Commissioner may waive the exhaustion requirement.  *Crayton v. Callahan*, 120 F.3d 1217, 1220-21 (11th Cir. 1997).  Waiver occurs, for example, when the Commissioner fails to raise exhaustion as a bar to a district court's review of a claim.  *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 766-67 (1975)); *see also Arnold v. Comm'r of Soc. Sec. Admin.*, 724 F. App'x 772, 783 n.7 (11th Cir. 2018) (holding Commissioner waived administrative exhaustion requirement by failing to raise the issue in the district court or before the appellate court) (citing *Crayton*).

twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  An applicant for DIB must demonstrate disability between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec. Admin.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.   20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at § 404.1520(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Beard met the SSA's insured status requirements through December 31, 2021, and did not engage in substantial activity between March 31, 2014 (the alleged onset date of her disability) and December 31, 2021 (her date last insured).  (Tr. at 527).  The court will refer to the period between March 31, 2014, and December 31, 2021, as the "relevant period."

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is

expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined that during the relevant period Beard had the following severe impairments: "status post Chiari decompression surgery," headaches, cognitive disorder, major depressive disorder, "status post left knee surgery," and degenerative disc disease. (Tr. at 527).[4]

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined that during the relevant period Beard did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (Tr. at 527).

---

[4] Chiari decompression surgery is performed to address Chiari malformation, which occurs when part of the skull is misshapen or smaller than typical, resulting in pressure that forces brain tissue downwards into the spinal canal. *See* https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last accessed September 17, 2024).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined that during the relevant period Beard had the RFC to perform a limited range of sedentary work. (Tr. at 529). At the fourth step, the ALJ determined that during the relevant period Beard could not perform her past relevant work as a cake decorator, pastry chef, baker, or cook. (*Id.* at 535-36).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the

6

claimant is disabled.  *Id.* at § 404.1520(a)(4)(v) and (g)(1).

At the fifth step, considering Beard's age, education, work experience, and RFC, the ALJ determined that during the relevant period there were jobs existing in significant numbers in the national economy, such as those of egg processor, cuff folder, and dowel inspector, that Beard could perform.  (Tr. at 536-37).  Therefore, the ALJ concluded Beard was not disabled during the relevant period.  (*Id.* at 537-38).

## III.   Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram*, 496 F.3d at 1260; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a

preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

On appeal, Beard argues the ALJ erred in assigning little weight to the opinions of Drs. Bentley and Pearlman and only some weight to the opinion of Robert Estock, M.D., a state agency psychiatric consultant. (Docs. 12, 17).

### A.   Evaluation of Medical Opinions[5]

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

---

[5] New regulations for evaluating medical opinions apply to DIB applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Beard and the Commissioner agree the old regulations, and not the new regulations, apply here. (*See* Doc. 12 at p. 4 n.5; Doc. 16 at p. 6 n.2). As stated, Beard filed her initial application for DIB benefits on September 28, 2015. (Tr. at 524).

prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). " 'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some other rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

"The ALJ may consider many factors when weighing medical evidence, including the claimant's relationship with the examining or treating physician, whether a medical opinion is well supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r of Soc. Sec. Admin.*, 442 F. App'x 438, 439 (11th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c) (identifying factors relevant to assigning weight to medical opinions). "An ALJ may reject any medical opinion if the evidence supports a contrary

finding." *Arnold*, 724 F. App'x at 779 (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

However, "[a]bsent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

### 1. Dr. Bentley's Opinion

Dr. Bentley performed a consultative psychological examination of Beard on December 2, 2015. (Tr. at 462-64). As part of that examination, Dr. Bentley administered a mental status examination to Beard. (*Id.* at 463). The mental status examination revealed Beard was able to recall two of three objects after a five-minute delay and recite six digits forwards and four backwards; correctly stated there are fifty-two weeks in a year, the sun rises in the East, Brazil is located in South America, and Shakespeare is the author of *Hamlet*; correctly interpreted two

proverbs and stated the analogy in three of three abstractions; was able to perform serial sevens and threes from one hundred; correctly spelled the word "world" forwards and backwards; correctly identified national and state leaders; and was able to count backwards from twenty to one. (*Id.* at 463). Dr. Bentley found Beard's response time slowed over the course of the mental status examination, and he interpreted that finding as evidence of "obvious difficulty sustaining [] concentration." (*Id.*). He also found evidence of a moderate-to-severe sleep disturbance attributable to Beard's headaches. (*Id.*). He noted Beard was maintaining employment for a few hours each week. (*Id.*). Ultimately, he opined Beard's ability to perform complex or repetitive work-related tasks was severely limited and her ability to perform simple work-related tasks was impaired to a moderate-to-marked degree. (*Id.* at 464).

The ALJ assigned little weight to Dr. Bentley's opinion. (*Id.* at 535). As grounds for discounting the opinion, the ALJ first reasoned the opinion was inconsistent with Beard's ability to complete the mental status examination accurately. (*Id.*). This reasoning misses the point made by Dr. Bentley, which was not that Beard lacked the cognitive ability to respond to the questions and commands of the mental status examination correctly but, rather, that Beard lacked the cognitive ability to respond to the questions and commands with temporal consistency.

The ALJ next asserted Beard's slowed response time in relation to the mental

status examination was the only support Dr. Bentley provided for his opinion. (*Id.*).

This assertion is inaccurate. In addition to Beard's slowed response time, Dr.

Bentley's finding of a moderate-to-severe sleep disturbance supports his opinion.

(*See id.* at 463).

The ALJ then reasoned Dr. Bentley's opinion was inconsistent with Beard's

medical record as a whole, which she asserted lacked any complaints of impaired

cognition. (*Id.* at 535). Contrary to the ALJ's assertion, Beard's medical record

does include a complaint of impaired cognition. Beard presented to Dr. Pearlman

on October 19, 2021, with complaints of "overwhelming" fatigue, weakness, and

pressure in her head followed by poor cognition that lasted between 30 minutes and

many hours. (*Id.* at 881).

The ALJ finally noted Beard was working part-time as a cake decorator,

which vocational experts classified as skilled work, at the time Dr. Bentley

performed his examination and for 10 months thereafter. (*Id.* at 535). First, this is

an incomplete depiction of Beard's part-time work. Beard told Dr. Bentley she was

able to work between seven and fourteen hours each week decorating cakes and

insisted that if she worked more than that her headaches and fatigue got "real bad."

(*Id.* at 463). Second, to state the obvious, a claimant's ability to work part-time does

not show the claimant can work full-time. *See Love v. Colvin*, 2016 WL 741974, at

*5 (N.D. Ala. Feb. 24, 2016) (holding claimant's ability to work part-time – between

four and eight hours a day for three days a week – was not reason to discredit claimant's testimony of disabling limitations and did not demonstrate claimant's ability to work full-time). The SSA requires an individual to be able to work on a "regular and continuing basis," defined as eight hours a day for five days a week (or an equivalent work schedule), to avoid a finding of disability. *See* SSR 96-8p. Beard's ability to work no more than one-third of a standard work week performing skilled work strikes the court as consistent with a severe limitation in the performance of complex or repetitive work-related tasks and a moderate-to-marked limitation in the performance of simple work-related tasks.

The opinion of a one-time examining psychologist is not entitled to the same deference as the opinion of a treating medical source. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford*, 363 F.3d at 1160; *Sober v. Comm'r of Soc. Sec. Admin.*, 841 F. App'x 109, 112 (11th Cir. 2020). However, an ALJ still must articulate reasons supported by substantial evidence for discounting the opinion of a one-time examining psychologist. *See Winschel* (discussed *supra*). As discussed above, the ALJ here failed to articulate reasons supported by substantial evidence for assigning little weight to Dr. Bentley's opinion.

### 2. Dr. Estock's Opinion

Dr. Estock offered an opinion regarding Beard's mental residual functional capacity on December 18, 2015, in his role as a state agency psychiatric consultant.

(*Id.* at 100-02).  He opined in relevant part that Beard would benefit from a "flexible schedule," "casual supervision," and "frequent prompts"; could learn and remember simple work routines only with more than usual (or extended) practice; and would miss one or two days of work each month.  (*Id.* at 100-01).

The ALJ assigned only some weight to Dr. Estock's opinion.  (*Id.* at 535).  As grounds for assigning only some weight to the opinion, the ALJ asserted Dr. Estock included in the opinion restrictions that were "vague and unquantified" or "expressed in terms that d[id] not correspond to [applicable] vocational guidance" and found there was no evidentiary basis for the degree of absenteeism Dr. Estock predicted.  (*Id.*).

The court is not convinced the restrictions Dr. Estock formulated were, in the world of Social Security claims analysis, vague or beyond the scope of applicable vocational guidelines.  Moreover, the record does contain evidence that supports Dr. Estock's prediction Beard would miss one or two days of work each month.  Beard reported to Dr. Pearlman on September 2, 2015, that her work as a baker was becoming more challenging because of radiating pressure in the back of her head and stated in a function report completed on October 8, 2015, that she could not sleep because of constant pain and pressure.  (*Id.* at 313, 448).

Like the opinion of a one-time examining psychologist, the opinion of a non-examining state agency psychiatric consultant is not entitled to the same deference

as the opinion of a treating medical source, but an ALJ still must articulate reasons supported by substantial evidence to discount the opinion. *Jarrett v. Comm'r of Soc. Sec. Admin.*, 422 F. App'x 869, 873 (11th Cir. 2011); *see also Winschel* (discussed *supra*). As discussed above, the ALJ here failed to articulate reasons supported by substantial evidence for assigning no more than some weight to Dr. Estock's opinion.

### 3. Dr. Pearlman's Opinion

Dr. Pearlman began treating Beard for headaches and associated symptoms in June 2011, shortly before she underwent a craniotomy to correct her Chiari malformation. (Tr. at 404-05). He treated her from that time through at least May 2022. (*See id.* at 427-41, 448-53, 465-70, 505-19, 878-93). Dr. Pearlman completed a questionnaire regarding Beard's functional limitations on December 6, 2017. (*Id.* at 501-04). He opined Beard's pain would increase with prolonged sitting, standing, or walking and distract her from completing job tasks; Beard would require unscheduled breaks; and Beard would miss more than two days of work each month. (*Id.* at 501-04).

The ALJ assigned little weight to Dr. Pearlman's opinion. (*Id.* at 534). The first reason the ALJ articulated for the assignment was that, in the three years preceding completion of the questionnaire, Dr. Pearlman saw Beard only one time, on October 18, 2016, and that Beard did not complain of headaches during that visit.

(*Id.*).  The findings on which that reasoning is based are factually inaccurate.  In the three years preceding completion of the questionnaire, Dr. Pearlman saw Beard not only on October 18, 2016, but also on April 3, 2015, and September 2, 2015.  (*See id.* at 448-53).  Moreover, Dr. Pearlman's notes from those appointments – including the October 18, 2016 appointment – fairly are read as documenting complaints of continued headaches.  (*Id.* at 448, 451, 468).

The ALJ additionally discounted Dr. Pearlman's prediction Beard would miss more than two days of work each month because the prediction was not accompanied by an explanation.  (*Id.* at 534).  That is not a reason, in and of itself, to discount a medical opinion.  *See Schink v. Comm'r of Soc. Sec. Admin.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (rejecting as basis for discounting medical opinion the fact that opinion was expressed "in a 'check box' format with limited space for explanation").  Moreover, Dr. Pearlman's prediction regarding Beard's absenteeism was corroborated by Dr. Estock.[6]  This was a detail Chief Judge Proctor noted and found important in his memorandum opinion concluding the assignment of little weight to Dr. Pearlman's opinion on the second turn of Beard's claim before an ALJ was not

---

[6] Dr. Estock opined Beard would miss one or two days of work each month, while Dr. Pearlman opined Beard would miss more than two days of work each month.  However, Dr. Estock's opinion nonetheless corroborates Dr. Pearlman's opinion insofar as two vocational experts now have testified Beard would be precluded from performing jobs within her capabilities if she missed two or more days of work each month.  (Tr. at 56, 87).  The testimony of the third vocational expert was less clear as to whether an employer would tolerate two absences per month.  (*See id.* at 577-79).

supported by substantial evidence.  (*See* Tr. at 640).

Finally, the ALJ discounted Dr. Pearlman's opinion based on a finding the opinion was inconsistent with evidence showing "headaches controlled, symptoms of uncertain etiology, unremarkable MR scans, unrevealing testing for seizures, and mild findings of the cervical spine."  (*Id.* at 534).  The characterization of Beard's headaches as controlled is, at best, an oversimplification.  Dr. Pearlman's treatment notes document improvement with adjustments to Beard's medication regimen but characterize Beard's headaches as "still quite severe."  (*Id.* at 448, 451, 470, 505, 508, 511, 517).  Contrary to the ALJ's finding of "unremarkable MR scans," imaging of Beard's brain and cervical spine in October 2016 revealed pseudomeningoceles. (*Id.* at 468).[7]  Moreover, on review of Beard's first appeal to this district court, Chief Judge Proctor rejected the absence of abnormal imaging findings as a basis for discounting Dr. Pearlman's opinion.  (*Id.* at 639-40).  Finally, absent elaboration by the ALJ, the court is at a loss to understand how "symptoms of uncertain etiology" and "unrevealing testing for seizures" are inconsistent with Dr. Pearlman's opinion.

As stated, an ALJ is required to give the opinion of a treating physician substantial or considerable weight absent good cause for discounting the opinion.

---

[7] Pseudomeningoceles are "abnormal collections of cerebrospinal fluid (CSF) that occur due to leakage from the CSF-filled spaces surrounding the brain and/or spinal cord as a result of trauma or surgery."  *See* https://radiopaedia.org/articles/pseudomeningocele-1?lang=us#:~:text=Pseudomeningoceles%20are%20abnormal%20collections%20of,result%20of%20trauma%20or%20surgery. (last accessed September 17, 2024).

*See Winschel* (discussed *supra*).  And as discussed above, the ALJ here failed to articulate good cause supported by substantial evidence for assigning less than substantial or considerable weight to Dr. Pearlman's opinion.

## V.   Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence.  Therefore, the decision is due to be reversed and remanded for further consideration.  A separate order will be entered.

**DONE** this 17th day of September, 2024.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE